(200 P.3d 490)
No. 100,241

STATE OF KANSAS, *Appellant,* v. CODY W. BEAVER, *Appellee.*

Opinion filed February 13, 2009.

*Richard E. James,* county attorney, and *Stephen N. Six,* attorney general, for appellant.

*Bryant T. Barton,* assistant public defender, of Junction City, for appellee.

Before ELLIOTT, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: Cody W. Beaver was charged with one count of felony possession of methamphetamine with intent to sell, deliver, or distribute, one count of felony possession of drug paraphernalia, and one count of misdemeanor possession of drug paraphernalia. A district magistrate judge conducted a preliminary hearing and found probable cause to bind Beaver over on the charges. Beaver later moved to dismiss all charges for lack of probable cause. The trial court granted the motion. On appeal, the State contends that the trial court improperly granted the motion to dismiss. We disagree. Accordingly, we affirm.

In September 2007, the State charged Beaver with one count of felony possession of methamphetamine with intent to sell, deliver, or distribute (under K.S.A. 2006 Supp. 65-4161[a]), one count of felony possession of drug paraphernalia (under K.S.A. 2006 Supp. 65-4152[a][3]), and one count of misdemeanor possession of drug paraphernalia (under K.S.A. 2006 Supp. 65-4152[a][2]).

These charges arose out of the February 16, 2007, execution of a search warrant at a residence in Clay Center, Kansas. When the warrant was executed, Beaver was present, although he did not reside in the home. Beaver was detained at the back door of the home, approximately 3-4 feet from the kitchen table. After accounting for all the occupants of the home, the officers made an inspection of the premises. In the kitchen, the officers saw a table. On top of the table, the officers saw a digital scale. In addition, the officers saw money, bags of a crystal substance, and another bag of a crystal substance visible from an open drawer.

At the preliminary hearing, the State presented an inventory of the seized items, including a black nylon bag containing small baggies of a crystal substance, a scale, and a Ziploc bag with 21 grams of a crystal substance. A field test of the crystal substances showed the presence of methamphetamine. Officer Steve Squires, the sole witness during the preliminary hearing, stated that the seized scale

and bags were commonly used for the packaging and sale of certain types of narcotics. Other items seized from the home included cash, a small silver container which had tested positive for the presence of methamphetamine, and a buy sheet, defined by Squires as "a list of names or initials and amounts of money and types of product they get—a gram, a half gram, quarter gram, or a full ounce [of drugs]." At the preliminary hearing, the State presented photos of the scene but acknowledged that the items had been rearranged before taking the photos.

. Squires further testified that although the residence was generally cluttered and disorganized, all of the seized items were in plain view from the back door, where Beaver had been detained. In the weeks before the warrant's execution, Beaver had been a frequent visitor to the home. The officers, however, had no evidence of how long Beaver had been at the residence on that day before their arrival. The officers found no mail or other documents at the residence in Beaver's name.

Ultimately, the magistrate judge found "that the offense as set forth in the complaint was committed and further finds there is probable cause to believe the Defendant guilty of the commission of said offense." In response to the magistrate judge's decision, Beaver moved in limine to enforce suppression of the items seized from his person during execution of the search warrant and moved to dismiss for lack of probable cause. The motion to dismiss alleged that the magistrate judge had erred in finding probable cause to bind over Beaver for the charges because Beaver was never in exclusive or nonexclusive possession of the items.

At a hearing on Beaver's motions, the State did not oppose Beaver's motion in limine. The district judge granted Beaver's motion to dismiss for lack of probable cause and dismissed with prejudice counts 1 and 2 of the complaint (felony possession with intent to sell and felony possession of drug paraphernalia). In rejecting the State's theory of constructive possession, the district judge distinguished a case relied on by the State and explained how the State's constructive possession theory was flawed:

"THE COURT: Counsel, I have reviewed—I've read the preliminary hearing transcript and reviewed your submissions and heard your arguments. I would

agree with counsel for the defendant that this case is distinguishable factually from the *Hazley* case because in that case the woman was the owner of the home. This case we have no contact with Mr. Beaver in this home other than the fact that he was there. He had been seen coming and going from the place, as I remember the testimony by Clay Center police officer, on several occasions prior to the day in question, but there's no testimony to suggest how long he had been at the—at this house when the officers arrived to serve the search warrant. Proximity we know is not enough to establish constructive possession. Proximity and plain view is not enough to establish constructive possession under the law as I understand it. You've got to have something that showed that he intended to control it or he was in control of it. As I review this preliminary hearing transcript it's void of any evidence to that effect. There's nothing to suggest that Mr. Beaver had any control over what was on the table or intended to control it. He may have gone in there and even if it was in plain view—and frankly I don't think the 21 grams of meth was in plain view based on the photograph in Defendant's Exhibit 2. That little three drawer thing is stuck back behind a bunch of stuff and you can't tell what's in the third or middle drawer of it from the vantage point that he was in."

In its response to defendant's motion to dismiss, the State admitted that the kitchen table was very cluttered.

The State timely filed a notice of appeal to the dismissal. In order to perfect this appeal, the State voluntarily dismissed count 3 of the complaint (misdemeanor possession of drug paraphernalia).

*Did the District Court Err in Granting Beaver's Motion to Dismiss for Lack of Probable Cause?*

When an appellate court reviews the trial court's dismissal of a complaint, it "must examine the evidence de novo, using the same standard to weigh the evidence as the trial court used." *State v. Romo-Uriarie,* 33 Kan. App. 2d 22, 27, 97 P.3d 1051, *rev. denied* 278 Kan. 851 (2004). A trial court conducts a preliminary examination to determine whether "it appears that a felony has been committed and [if] there is probable cause to believe that a felony has been committed by the defendant, the magistrate shall order the defendant bound over for trial. [Citations omitted.]" *State v. Powell,* 266 Kan. 282, 283, 971 P.2d 340 (1998). Probable cause " ' "is the reasonable belief that a specific crime has been committed and that the defendant committed the crime." ' [Citations omitted.] Because probable cause does not require evidence of every

element of a crime, it must not be confused with proof beyond a reasonable doubt of guilt. [Citations omitted.]" *State v. Abbott,* 277 Kan. 161, 164, 83 P.3d 794 (2004). An analysis of the existence of probable cause requires the trial court to determine whether the evidence is sufficient "to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Romo-Uriarie,* 33 Kan. App. 2d at 27. When reviewing the evidence, the district court must draw inferences in favor of the State. *State v. Anderson,* 270 Kan. 68, 71, 12 P.3d 883 (2000). Moreover, it is not the province of the trial court "to determine the wisdom of the decision to file charges or to determine whether the possibility of a conviction is likely or remote." 270 Kan. at 71.

Both counts 1 and 2 of Beaver's complaint required the State to prove the element of possession. Count 1 of the complaint reads as follows:

"That on or about the 16th day of February, 2007, the said CODY W. BEAVER, within Clay County, Kansas, did then and there being, unlawfully, feloniously, intentionally, willfully and knowingly possess or have under his control a stimulant, to-wit: methamphetamine, with the intent to sell, deliver; said methamphetamine being a stimulant drug designated in subsection (d)(3) of K.S.A. 65-4107 and amendments thereto, other than as authorized by the Uniform Controlled Substances Act, **FELONY POSSESSION OF METHAMPHETAMINE WITH INTENT TO SELL, DELIVER, OR DISTRIBUTE**, in violation of K.S.A. 65-4161(a), a Drug Severity Level 3 Felony."

K.S.A. 2006 Supp. 65-4161(a) makes it "unlawful for any person to sell, offer for sale or have in such person's *possession* with intent to sell, deliver or distribute; prescribe; administer; deliver; distribute; or dispense any opiates, opium or narcotic drugs, or any stimulant." (Emphasis added.)

In addition, Count 2 contained a possession element:

"That on or about the 16th day of February, 2007, the said **CODY W. BEAVER,** within Clay County, Kansas, did then and there being, unlawfully, feloniously, intentionally, and willfully possess with intent to use drug paraphernalia, including but not limited to, to-wit: set of Jennings digital scales, set of Equinox scales, set of Vibe digital scales, and numerous small plastic baggies; to pack, repack, sell, or distribute a controlled substance, to-wit: methamphetamine, **FELONY POSSESSION OF DRUG PARAPHERNALIA,** in violation of K.S.A. 65-4152(a)(3), a Drug Severity Level 4 Felony."

K.S.A. 2006 Supp. 65-4152(a)(3) makes it unlawful for a person to use or *possess* with intent to use "any drug paraphernalia to . . . manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, sell or distribute a controlled substance in violation of the uniform controlled substances act."

Possession is defined as "having control over a place or thing with knowledge of and the intent to have such control." PIK Crim. 3d 53.00. Possession "may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control. [Citation omitted.]" *State v. Bullocks*, 2 Kan. App. 2d 48, 49-50, 574 P.2d 243 (1978).

When the search warrant was executed, no controlled substances or paraphernalia were found on Beaver's person. Therefore, our inquiry becomes whether there was probable cause to bind Beaver over on the charges under a theory of constructive, or nonexclusive, possession. Such possession may be proven by circumstantial evidence. *State v. Anthony*, 242 Kan. 493, 502, 749 P.2d 37 (1988).

In order to establish a defendant's constructive possession of drugs, more than "mere presence or access to the drugs" is required to sustain a conviction. *State v. Cruz*, 15 Kan. App. 2d 476, 489, 809 P.2d 1233 (1991). The State must prove "other incriminating circumstances linking the defendant to the drugs." *Anthony*, 242 Kan. at 502. Factors establishing a defendant's possession of the drugs include the following: "[a] defendant's proximity to the area where the drugs were found, the fact that they were in plain view, the proximity of his belongings to the drugs, and his previous participation in the sale of drugs." *Anthony*, 242 Kan. at 502-03. Additional factors include defendant's incriminating statements and suspicious behavior. *State v. Boggs*, 287 Kan. 298, 317, 197 P.3d 441 (2008). These factors, when taken together, are sufficient to support an inference of possession. *Anthony*, 242 Kan. at 503.

In analyzing the presence of these factors in this case, the State refers this court to *State v. Hazley*, 28 Kan. App. 2d 664, 19 P.3d 800 (2001), and *State v. Bullocks*, 2 Kan. App. 2d 48. Beaver, however, urges this court to instead rely on *State v. Faulkner*, 220 Kan. 153, 551 P.2d 1247 (1976).

In *Hazley*, defendant Hazley appealed her jury convictions for possession of methamphetamine and marijuana, arguing that there was insufficient evidence to sustain her conviction. The charges arose out of the execution of a search warrant at a home that Hazley shared with another person. *Hazley*, 28 Kan. App. 2d at 665. Similarly, in *Bullocks*, Topeka police officers executed a search warrant in a residence where defendant and another person jointly resided. 2 Kan. App. 2d at 49. On the property, officers searched a small trailer belonging to defendant and found marijuana, marijuana paraphernalia, and mail addressed to the defendant. *Bullocks*, 2 Kan. App. 2d at 49-50.

Both cases are distinguishable from the case at bar. While Beaver was not a resident of the searched residence, the defendants in *Hazley* and *Bullocks* were co-occupants of the searched residences. Therefore, these cases will not bear nearly the weight of reliance which the State places upon them.

On the other hand, Beaver urges this court to rely on *Faulkner*. In that case, Faulkner appealed his conviction for possession of a controlled substance with intent to sell. Faulkner's charges arose when police officers found the controlled substance amobarbital, a hypodermic needle, and a small plastic bag of pills in a car in which Faulkner was a passenger. The pills were located on the passenger's side of the car. Our Supreme Court ultimately affirmed Faulkner's conviction based upon the following circumstantial evidence that Faulkner seemed to be intoxicated but no alcohol smell was detected, that Faulkner admitted to another individual that he possessed the drugs before he was arrested, that the substances were found on Faulkner's side of the car and in plain view, and that Faulkner had a prior conviction for possession of a controlled substance.

Using *Faulkner* as guidance, this court must determine whether there are other incriminating circumstances linking Beaver to the drugs besides his mere presence at the scene. See *Anthony*, 242 Kan. at 502; *Cruz*, 15 Kan. App. 2d at 489. Specifically, we consider the following factors: Beaver's proximity to the area where the drugs were found, the plain view of the drugs, the proximity of Beaver's belongings to the drugs, Beaver's previous participation

in the sale of drugs, Beaver's incriminating statements, and any suspicious behavior. See *Boggs,* 287 Kan. at 316-17; *Anthony,* 242 Kan. at 502-03; *Cruz,* 15 Kan. App. 2d at 489.

When detained, Beaver was 3 to 4 feet from the kitchen table on which the controlled substances and drug paraphernalia were located. The record contains no information as to where Beaver's personal belongings were when he was arrested. Similarly, the record lacks evidence to demonstrate that Beaver was a resident of the home—at most, he was a frequent visitor. Moreover, officers found no evidence of mail or other documents at the residence in Beaver's name, which would have shown that Beaver had a connection with the home.

Although there was some dispute as to the extent of the plain view of the seized items, viewed in the light most favorable to the State, the evidence showed that the seized items were visible from the back door where Beaver had been detained. The record contains no evidence of Beaver's previous participation in the sale of drugs or that he exhibited any incriminating or suspicious behavior during the warrant's execution.

Beaver's circumstances are unlike those of the defendant in *Faulkner.* In *Faulkner,* there was sufficient evidence to affirm the defendant's conviction on a constructive possession theory. For example, Faulkner was intoxicated when arrested. Moreover, the driver of the car, in which Faulkner was a passenger, testified that Faulkner had been in possession of the items before he was arrested. The seized items were found in plain view and in close proximity to Faulkner's person. In addition, Faulkner had a prior conviction for possession of a controlled substance. *Faulkner,* 220 Kan. at 154-55, 160. In the case at bar, the only factors inferring Beaver's constructive possession of the seized items were his relative proximity to the seized items and the fact that such items were in plain view. Weighing against Beaver's constructive possession were the following factors: he was not a resident of the home; no evidence was presented showing that his belongings were found in close proximity to the seized items; no evidence was presented that Beaver had ever participated in the sale of drugs; and no ev-

idence was presented that Beaver acted in a suspicious or otherwise incriminating behavior.

In addition, the State failed to show that Beaver was anything more than a social guest on the premises. Yet, the State contends that Beaver's presence at the home and his proximity to the illegal drugs and drug paraphernalia found on the kitchen table amount to constructive possession of those items. The State, however, presented no evidence that the kitchen was used exclusively for the packaging, selling, delivering, or distributing of methamphetamine. Moreover, the State admitted that the kitchen table was cluttered. In doing so, the State implicitly admitted that there were other items on the kitchen table that were not illegal. For example, the trial judge questioned whether the methamphetamine was in plain view:

"[F]rankly I don't think the 21 grams of meth was in plain view based on the photograph in Defendant's Exhibit 2. That little three drawer thing is stuck back behind a bunch of stuff and you can't tell what's in the third or middle drawer of it from the vantage point that he was in."

Without more than Beaver's mere presence and proximity to the illegal drugs, there was no probable cause to believe that he was in constructive possession of the illegal drugs and drug paraphernalia found on the kitchen table.

Based on a consideration of these factors, we determine that the trial court properly granted Beaver's motion to dismiss for lack of probable cause.

Affirmed.