RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0093p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 09-1788

DENOIS E. LANIER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 08-00137-001—Robert J. Jonker, District Judge.

Argued: January 18, 2011

Decided and Filed: April 14, 2011

Before: BATCHELDER, Chief Judge; MARTIN and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Lawrence J. Phelan, HAEHNEL & PHELAN, Grand Rapids, Michigan, for
Appellant. Jennifer L. McManus, ASSISTANT UNITED STATES ATTORNEY, Grand
Rapids, Michigan, for Appellee. **ON BRIEF:** Lawrence J. Phelan, HAEHNEL &
PHELAN, Grand Rapids, Michigan, for Appellant. Jennifer L. McManus, ASSISTANT
UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

SUTTON, Circuit Judge. Denois Lanier rented a room in the Comfort Suites

hotel in Benton Harbor, Michigan. A few minutes after the 11:00 a.m. check-out time,

a housekeeper entered the room (after knocking and hearing no answer) and noticed

what appeared to be a large quantity of drugs in the room. Management called the police

and allowed an officer to search the room at 11:30 a.m., one half-hour after the check-

out time but one half-hour before the end of the traditional grace period given to guests before the hotel deactivated their electronic keycards. The police found a considerable amount of cocaine and a scale. When Lanier later returned to the hotel, the police arrested him, after which Lanier challenged the search and arrest on Fourth Amendment grounds.

As we see it, and as the district court saw it, Lanier had no reasonable expectation of privacy in his hotel room at the time of the search. There is nothing unusual about a hotel housekeeper's entering a room after the check-out time and after no one responds to a knock on the door. And once the hotel learned of the presence of drugs in the room, it had every right to grant access to the police to determine whether the room was being used for illegal purposes. Because the police also had probable cause to arrest Lanier and because his below-guidelines sentence was reasonable, we affirm.

I.

On March 25, 2008, just after 11:00 a.m., Stephanie Price was completing her rounds as a housekeeper at the Comfort Suites hotel in Benton Harbor, Michigan. The hotel required guests to check out by 11:00 a.m., and Price was preparing the rooms for the next day's guests. She knocked on the door for Room 206 three or four times but heard no answer. Noting a "Do Not Disturb" sign hanging on the doorknob, Price called her manager, Stephanie Klein, to ask whether she should enter the room. Klein told her to do so.

Price entered the room, and after seeing some clothing hanging on a chair, she called the front desk to ask whether she should proceed to clean the room. The front-desk clerk, Jamie Marie Wilson, told her to "'go ahead and clean the room, and we'll put [the clothing] in the lost and found.'" R.32 at 148. Near the microwave, Price found baggies containing what looked like crack cocaine and a larger Ziploc bag containing what looked like powder cocaine; and, in the trash can, she found a measuring scale. Wilson and Klein checked the room and the baggies for themselves, and Wilson called the police.

Between 11:20 and 11:30 a.m., State Trooper Matthew Churchill responded. Stephanie Price met Churchill in the lobby and took him to Room 206, where she showed him the scale as well as the crack and powder cocaine. Churchill and Price left the room to wait for another officer.

As Trooper Churchill waited outside Room 206 for the officer's arrival, he heard running footsteps on the floor above him. Rhoda Spears, another housekeeper, burst into the hallway, saying something like, "'He's here, he's here, he's here,' or 'I think he's here, I think he's here,' or . . . 'Here they come, here they come.'" R.65 at 7. Churchill pressed for more information: "Who?" or "Here who come[s]?" R.32 at 24; R.65 at 7. Spears responded, "The person in the room." R.65 at 7.

Trooper Churchill walked to the stairway where Spears was standing. Spears told him, "They're parking. They are coming in the building right now." R.32 at 25. Churchill heard a keycard sliding into a card reader, a beep and a door opening. Churchill walked down the stairs, saw Lanier and arrested him.

A federal grand jury charged Lanier with distributing crack and powder cocaine. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), 841(b)(1)(C). Lanier filed a motion to suppress the evidence discovered in the room and during the encounter. The district court upheld the search of the room because Lanier had no reasonable expectation of privacy in the room at the time of the search, and it upheld the seizure because the police had probable cause to arrest him at the time of the seizure. Lanier conditionally pleaded guilty to the crack-cocaine distribution charge, reserving the right to appeal the suppression ruling. The district court accepted Lanier's plea and granted the government's § 5K1.1 motion, which allowed the court to sentence Lanier below the mandatory minimum. The court calculated a guidelines range of 46–57 months and sentenced Lanier to 40 months.

## II.

The Fourth Amendment prohibits "unreasonable searches and seizures" by law enforcement, U.S. Const. amend. IV, and a hotel room may be "the object of Fourth

Amendment protection as much as a home or an office." *Hoffa v. United States*, 385 U.S. 293, 301 (1966); *see also Stoner v. California*, 376 U.S. 483, 490 (1964).  To have standing to challenge the search of a hotel room, the guest must show (1) that he had "an actual (subjective) expectation of privacy" in the room and (2) that this expectation was "one that society is prepared to recognize as 'reasonable.'" *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (internal quotation marks omitted).

Did Lanier have a *subjective* expectation of privacy in Room 206 when the police searched it?  On the one hand, he left clothing, to say nothing of a lot of cocaine, in his hotel room, along with a Do Not Disturb sign outside of it, all of which suggest he still thought the room, and the right to keep others out of it, remained his.  That he returned to the hotel through the rear door with his keycard points in the same direction.  On the other hand, the 11:00 a.m. check-out time had come and gone, and Lanier knew nothing about the one-hour grace period.  Because it makes no difference to the outcome of this case, we will assume for the sake of argument that, when the police searched the room at 11:30 a.m. or so, Lanier still thought the room was his and that no one else, without his consent, could enter it.

Was this expectation of privacy *objectively* reasonable?  Ours is not the first case to raise this issue, and the precedents offer a few guideposts.

The starting point is that a hotel guest has a periodic right to occupy a room, not a permanent one.  "Once a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any article therein of which the hotel lawfully takes possession." *United States v. Allen*, 106 F.3d 695, 699 (6th Cir. 1997) (internal quotation omitted).  "[A] hotel guest's right to a room is limited to a predetermined period of occupancy," and it is reasonable to presume as a general matter "that hotel guests will check out at the designated time and their right in the premises does not automatically continue for some indefinite period." *United States v. Washington*, 573 F.3d 279, 285 (6th Cir. 2009).  Other circuits see it the same way. *See United States v. Huffhines*, 967 F.2d 314, 318 (9th Cir. 1992) ("A guest in a motel has no reasonable expectation of privacy in a room after the rental

period has expired."); *United States v. Larson*, 760 F.2d 852, 854–55 (8th Cir. 1985) (same); *United States v. Parizo*, 514 F.2d 52, 54 (2d Cir. 1975) (same); *United States v. Croft*, 429 F.2d 884, 887 (10th Cir. 1970) (same).

Yet a hotel's practices and communications with the guest may modify the general rule. "[T]he policies and practices of a hotel may result in the extension past checkout time of a defendant's reasonable expectation of privacy." *United States v. Dorais*, 241 F.3d 1124, 1129–30 (9th Cir. 2001); *see also United States v. Gill*, 16 F. App'x 850, 854 (10th Cir. 2001); *United States v. Kitchens*, 114 F.3d 29, 31–32 (4th Cir. 1997); *United States v. Owens*, 782 F.2d 146, 149–50 (10th Cir. 1986); *Larson*, 760 F.2d at 855; *United States v. Watson*, 783 F. Supp. 258, 263 (E.D. Va. 1992); *People v. Hardy*, 907 N.Y.S.2d 244, 248 (N.Y. App. Div. 2010). As relevant here, these practices often take two forms: giving a guest permission to stay until a later check-out time or generally acquiescing when a guest stays until a later check-out time.

*Larson*, *Gill* and *Dorais* illustrate the first form. In each case, the defendants asked, and received permission, to stay beyond the check-out time. They therefore had reasonable expectations of privacy in their hotel rooms through the extensions, though not when, as turned out in each case, they stayed beyond the new check-out time. *Gill*, 16 F. App'x at 854; *Dorais*, 241 F.3d at 1130 & n.4; *Larson*, 760 F.2d at 855.

*Watson*, *Owens* and *Kitchens* illustrate the second form. In *Owens* and *Watson*, the hotels on previous nights had allowed the defendants to stay beyond the check-out time and to pay after check-out time for continued occupancy. *Owens*, 782 F.2d at 149–50; *Watson*, 783 F. Supp. at 263. The defendants therefore reasonably believed that the hotels would allow them to do so again, permitting them to retain a privacy interest in their rooms. *Owens*, 782 F.2d at 149–50; *Watson*, 783 F. Supp. at 263; *see also Hardy*, 907 N.Y.S.2d at 248–49. In *Kitchens*, because the defendants had no "pattern or practice of staying past check-out time" that would give rise to an expectation of privacy after the expiration of their rental period, the Fourth Circuit held that they lacked a privacy interest in their rooms after the customary check-out time. 114 F.3d at 32.

The general rule, not the exceptions, applies to Lanier. The search occurred after the 11:00 a.m. check-out time. He did not ask the hotel to extend his stay. He did not receive permission from the hotel for a later check-out time. And the hotel had no history of acquiescing in delayed departures by Lanier.

The nature of a "grace" period also undermines Lanier's claim. Just because a hotel does not change keycards at 11:00 a.m. everyday, or does not charge guests for an extra night every time they have not removed all of their personal items by 11:00 a.m., does not mean that the guest, as opposed to the hotel, retains control over the room. What the hotel may voluntarily give as a general matter it can take away in an individual instance, at least where the guest has not secured a promise from the hotel that he may stay late. *Cf. Larson*, 760 F.2d at 855. One eminently reasonable ground for retracting a grace period is when the hotel, after check-out time, discovers that the guest has been using the room to peddle drugs.

Our decision in *Allen* suggests as much. After a one-day stay at a Days Inn, Allen paid for another night in the morning, but he failed to pay for his telephone charges. 106 F.3d at 697. That afternoon, the motel clerk noticed that he had made so many telephone calls that he no longer had enough credit to pay for the extra night. *Id.* Allen told the manager that he would pay, but hours passed without any effort to make good on the promise. *Id.* Fearing that Allen had left the motel without paying, the manager entered the room, where she found bricks of marijuana. *Id.* The manager locked the door with a deadbolt and called the police, who searched the room and arrested Allen. *Id.* Our court refused to suppress the drugs found in his room, noting that the motel manager "terminated [Allen's] privacy interest in [the room's] contents" when she locked Allen out after learning about the presence of drugs in the room. *Id.* at 699. A defendant, *Allen* explained, may lose his privacy interest if the "rental period has expired *or* been lawfully terminated." *Id.* (emphasis added). A similar conclusion applies here.

III.

Also unavailing is Lanier's claim that Churchill lacked probable cause to arrest him. The standard is straightforward. Were "the facts and circumstances within [Churchill's] knowledge and of which [he] had reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that [Lanier] had committed or was committing an offense"? *Beck v. Ohio*, 379 U.S. 89, 91 (1964). In answering this question, "[a]n eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (internal quotation marks omitted).

The application of this standard also is straightforward. As Churchill left Room 206, Spears ran from another floor to tell him, "Here they come, here they come." R.32 at 23–24. "Here who come[s]?" Churchill responded. R.32 at 24. "The person in the room," she replied. R.65 at 7. This exchange by itself gave Churchill an eyewitness identification on which he could rely.

Other circumstances, too, suggested that the man entering the hotel was the occupant of Room 206. The suspect entered a rear door, not the lobby entrance, and Churchill heard the suspect slide a keycard in the door, heard an "access beep" and heard the door open. R.32 at 25. All of this reinforced what Spears had told him: that a hotel guest was entering the building. And not just any guest: It was after check-out time, leaving few other potential guests in the hotel, as confirmed by Klein's testimony that the parking lot was "basically empty" at the time. R.32 at 182. Faced with a near-empty hotel, evidence that a hotel guest was entering the building and above all identification by a hotel employee, Churchill had probable cause to arrest Lanier for distributing drugs.

Lanier cannot overcome this conclusion based on conflicting testimony at the suppression hearing about what Spears said. At one point, Spears testified, "A car just came in the parking lot. Maybe that's them," R.32 at 70, or, "Somebody just came in the parking lot. Maybe that's him," R.32 at 71. Churchill and Price remembered Spears'

statements differently.    Churchill testified that Spears said, "Here they come now. . . .  Here they come, here they come," R.32 at 24, while Price recalled that Spears said, "I think he's here.  I think he's here.  He's here, he's here, he's here," R.32 at 97–98.  As the finder of fact, the district court had to decide what happened.  It concluded that, "when people are excited, they tend to say things repetitively," opting to credit Churchill and Price's version of the exchange.  R.65 at 6–7.  The court found that Spears said, "'He's here, he's here, he's here,' or 'I think he's here, I think he's here,' or . . . 'Here they come, here they come.'"  R.65 at 7.  In view of the testimony of Churchill and Price and in view of the rational explanation for discounting some of Spears' testimony, that finding is not clearly erroneous.

Lanier adds that Churchill acted too rashly in two respects:  (1) Churchill should have questioned Spears further to ensure her credibility, and (2) Churchill should have interrogated Lanier when Churchill encountered him on the staircase to determine whether he indeed was tied to Room 206.  As to the first point, Lanier correctly notes that Spears did not know what the occupant of Room 206 looked like.  But, as its "name implies," probable cause concerns probabilities, not certainties.  *Brinegar v. United States*, 338 U.S. 160, 175 (1949).  Churchill had ample reason to think that Spears was making an eyewitness identification, and he alleviated any reasonable doubt by responding to Spears' statements with a question, "Here who come[s]?"  Spears' initial statements and response to Churchill's question would lead a reasonable officer to believe that she was identifying the occupant of Room 206.  *See Texas v. Brown*, 460 U.S. 730, 742 (1983).

Lanier's second argument—that Churchill should have interrogated Lanier before arresting him—also fails.  Churchill had probable cause to arrest Lanier, and "[o]nce probable cause is established, an officer is under no duty to investigate further."  *Ahlers*, 188 F.3d at 371.

IV.

Turning to his 40-month sentence, Lanier claims that it is procedurally unreasonable.  *See Gall v. United States*, 552 U.S. 38, 51 (2007).  The district court, he says, "essentially" determined that it lacked the power to impose a lower sentence because it thought that the cocaine guidelines were mandatory.  Lanier Br. at 57.

The key word is "essentially."  No doubt *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Spears v. United States*, 555 U.S. __, 129 S. Ct. 840 (2009) (per curiam), establish that district courts may vary from the cocaine guidelines "based on a policy disagreement with those Guidelines."  *Spears*, 129 S. Ct. at 844.  But the sentencing judge understood that authority.  He just chose not to exercise it.  "[I]n this case," the court acknowledged, "having been aware of my discretion under *Spears* and all of the other cases, I choose not to exercise the discretion that I [have]."  R.64 at 15.  The judge went on to discuss the competing policy considerations at play.  Then, leaving no doubt about his grasp of this authority, he added:  "[A]s I said, in this case I'd choose not to exercise my discretion to sentence as though the guidelines were something other than they really are at this point, particularly where I believe the government's 5K has given me some flexibility in any event to depart on a well-recognized ground."  R.64 at 16.  When a judge is "aware of [his] discretion under *Spears*" and "choose[s] not to exercise [it]," that generally is the end of the matter.  *See United States v. Simmons*, 587 F.3d 348, 364–65 (6th Cir. 2009).  So it is here.

V.

For these reasons, we affirm.