NOT DESIGNATED FOR PUBLICATION

No. 128,300

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY JOSEPH GARCIA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Submitted without oral argument. Opinion filed June 12, 2026. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., BOLTON FLEMING, J., and JEFFREY GETTLER, District Judge, assigned.

PER CURIAM: In this appeal, we are asked to consider a single issue—whether the district court erred in denying a motion to suppress. Anthony Joseph Garcia was convicted by a jury of possession of methamphetamine, possession of drug paraphernalia, and possession of marijuana. His charges stemmed from a search of his person and backpack that occurred during his arrest for a separate charge of possession of methamphetamine. Garcia argues that because his arrest for the separate charge was not supported by probable cause, the search was illegal, and the evidence obtained from the search should have been suppressed.

1

After a thorough review of the record, we find the district court did not err in denying Garcia's motion to suppress. Under a totality of the circumstances, the facts in this case, viewed from the standpoint of an objectively reasonable police officer, amounted to probable cause supporting Garcia's arrest. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Anthony Joseph Garcia was arrested on October 3, 2021, in the lobby of the Prairie Band Casino and Resort. Law enforcement determined there was probable cause to arrest Garcia based on drugs found in a hotel room registered to him. After his arrest, his person and backpack were searched, and law enforcement found $3,500 in cash, a marijuana vape pen, a glass smoking pipe with residue, two capped syringes (one containing liquid), a metal pipe, and a scale with white residue.

As a result, Garcia was charged with possession of methamphetamine, possession of drug paraphernalia, and possession of marijuana. Garcia filed a motion to suppress, alleging that law enforcement did not have probable cause to arrest him and the evidence found during the search was therefore inadmissible. After an evidentiary hearing, the district court denied the motion to suppress. The State amended the complaint to add a second count of possession of methamphetamine and clarified that the first count of possession of methamphetamine was related to methamphetamine found in Garcia's hotel room, and the second count was based on methamphetamine found on the scale in his backpack.

The case proceeded to a jury trial where Officer Tanner Lemery of the Prairie Band Potawatomi Tribal Police Department testified. His testimony was largely the same as that given at the evidentiary hearing on Garcia's motion to suppress. Lemery stated that at approximately 11:55 a.m. on October 3, 2021, he was dispatched to the Prairie Band Casino and Resort to investigate a report of a stolen vehicle. Lemery met with Anthony

Garcia, who believed his vehicle had been stolen by a person named Angela Cortez. Garcia indicated that he had come to the casino with Cortez. Garcia then accompanied Lemery to the police station to file a report. When the report was completed, Lemery took Garcia back to the hotel.

A short while later, Officer Lemery went to Garcia's hotel room at the casino, room 1005, to ask Garcia if a picture Lemery had located was Cortez. The hotel confirmed that Garcia and Cortez were listed as the registered occupants of room 1005. Lemery knocked on the door and Garcia opened the door just far enough to exit the room. Garcia let the door close behind him. At trial, Lemery testified that he did not recall if there was anyone else in the room with Garcia. This testimony differed from Lemery's testimony at the hearing on the motion to suppress, where he stated, "there were some guests behind [Garcia]" in room 1005. Lemery wore a body camera and that footage showed only a small view of the room. The footage did not indicate that anyone else was present in the room. After visiting with Garcia outside room 1005, Lemery left the scene at 3:55 p.m.

Officer Lemery was called back to the hotel at 5:23 p.m. because cleaning staff had entered room 1005 and found what they believed to be drugs. Hotel staff opened the door of room 1005 for Lemery, and Lemery located what he believed to be methamphetamine in the center of the room, at the foot of the bed, in plain view. Lemery took photographs and field tested the substance, which was positive for methamphetamine.

Officer Lemery wanted to talk with Garcia about the discovery of illegal drugs in room 1005 that occurred shortly after Garcia's departure. Lemery learned from hotel staff that Garcia had checked out of room 1005 sometime after 3:55 p.m. and moved to room 3039. Officer Lemery went to room 3039 to find Garcia, and while several people were present, Garcia was not. But while Lemery was still in room 3039, Garcia called the hotel

phone in that room. Lemery answered but did not identify himself. Garcia stated that he was on his way back to the hotel.

Officer Lemery went to the casino lobby and, as Garcia entered the hotel, arrested him for possession of the methamphetamine found in room 1005. As part of Garcia's arrest, Lemery searched Garcia's pockets and Officer Jesse Cannon searched the backpack Garcia was carrying. Lemery's search yielded $3,500 in cash and a vape pen that Garcia stated was marijuana. Cannon found a glass smoking pipe with residue, two capped syringes (one containing liquid), a metal pipe, and a scale with white residue.

At the conclusion of the trial, the jury found Garcia not guilty of possession of the methamphetamine from room 1005 but guilty of possession of the methamphetamine found on the scale in his backpack, possession of drug paraphernalia, and possession of marijuana. The district court sentenced Garcia to a controlling sentence of 13 months in prison but suspended his sentence and placed him on probation for 12 months.

Garcia timely appeals.

ANALYSIS

DID THE DISTRICT COURT ERR BY DENYING GARCIA'S MOTION TO SUPPRESS?

*Standard of Review*

On a motion to suppress, an appellate court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the court's ultimate legal conclusion de novo. *State v. Garrett*, 319 Kan. 465, 469, 555 P.3d 1116 (2024). In reviewing the factual findings, an appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Lutz*, 312 Kan. 358, 363, 474 P.3d 1258 (2020).

*The district court did not err in denying the motion to suppress.*

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." That same protection is offered by section 15 of the Kansas Constitution Bill of Rights. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014).

Pursuant to K.S.A. 22-2401, an officer may arrest a person when "[t]he officer has probable cause to believe that the person is committing or has committed" a felony or certain misdemeanors. K.S.A. 22-2401(c). An arrest without a warrant is considered a seizure under the Fourth Amendment and must be supported by probable cause. *United States v. Watson*, 423 U.S. 411, 417-18, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976).

The Kansas Supreme Court has defined probable cause:

"'Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime. Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *State v. Hubbard*, 309 Kan. 22, 35, 430 P.3d 956 (2018) (quoting *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 [2004]).

In deciding if law enforcement had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause. [Citations omitted.]" *Dist. of Columbia v. Wesby*, 583 U.S. 48, 56-57, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018). Whether probable cause exists is based on the totality of the circumstances. *State v. Chavez-Majors*, 310 Kan. 1048, 1055, 454 P.3d 600 (2019).

"Because probable cause does not require evidence of every element of a crime, it must not be confused with proof beyond a reasonable doubt of guilt." *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 (2004).

Garcia's challenge pertains to whether probable cause supported his arrest for possession of the methamphetamine found in his first hotel room—room 1005. Garcia argues that because there was no probable cause to support his arrest, the evidence from the search that occurred as part of his arrest must be suppressed.

Under the relevant statute in effect at the time Garcia committed his crimes, possession was defined as "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2021 Supp. 21-5701(q). Possession "may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control. [Citations omitted.]" *State v. Beaver*, 41 Kan. App. 2d 124, 129, 200 P.3d 490 (2009). It does not have a temporal requirement. *State v. Stuart*, 319 Kan. 633, 636, 556 P.3d 872 (2024). Constructive possession may be established by circumstantial evidence, but the State must demonstrate factors that tie the defendant to the possessed item. *State v. Campbell*, 317 Kan. 511, 527, 532 P.3d 425 (2023). In the context of drug possession, some of those factors include "'(1) the defendant's previous sale or use of narcotics; (2) the defendant's proximity to the area in which the drugs were found; (3) the fact that the drugs were found in plain view; and (4) the defendant's incriminating statements or suspicious behavior. [Citation omitted.]'" 317 Kan. at 527 (quoting *State v. Keel*, 302 Kan. 560, 567-68, 357 P.3d 251 [2015]). However, determining probable cause does not require "a rigid application of factors." *State v. Keenan*, 304 Kan. 986, 994, 377 P.3d 439 (2016). Instead, we review the evidence for probable cause considering the totality of the circumstances from the perspective of an objectively reasonable police officer. 304 Kan. at 994.

6

Here, there are a number of factors present that demonstrate probable cause supported Garcia's arrest. First, we note that the district court based its probable cause decision, at least in part, on a finding that "a well-known fact that the casino located here in Jackson County is a constant source of drug crime." While some factors alone may not be enough to establish probable cause that a defendant possessed illegal drugs, a combination of factors can establish possession based on a totality of the circumstances. The United States Supreme Court has stated, in the context of the lower standard of reasonable suspicion, that "[a]n individual's presence in a 'high crime area,' standing alone, is not enough to support a reasonable, particularized suspicion of criminal activity, but a location's characteristics are relevant in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 119, 120 S. Ct. 673, 673, 145 L. Ed. 2d 570 (2000). Thus, the factual finding by the district court that the casino was "a constant source of drug crime" may properly be considered as a single factor in determining probable cause, but more is required.

In addition, the record contains significant evidence of Garcia's proximity to the location of the drugs—another factor we may properly consider. It is uncontroverted that Officer Lemery knew Garcia was one of only two registered occupants of room 1005. Officer Lemery confirmed Garcia's presence in this room when he went there to show him a picture of Cortez, who Garcia alleged stole his vehicle. While Lemery could not get a clear view of the room because Garcia came into the hall, he knew that the other person who was registered as staying in the room, Cortez, was not there because Garcia had just alleged she had stolen his vehicle. Lemery ended this encounter at 3:55 p.m. Lemery was called back to the hotel less than 90 minutes later to respond to a report that drugs had been found in room 1005. Lemery's testimony at trial was that when he responded for a second time to room 1005, the door had remained locked and housekeeping had entered the room using a master key.

7

The record also contains evidence of another factor—the methamphetamine was found in plain view in the hotel room. Hotel staff opened the door of room 1005 for Lemery, and he conducted a search of the room, finding a baggie containing a white substance in plain view near the foot of bed. Based on his training and experience, as well as field testing, Lemery concluded the substance was methamphetamine.

Moreover, there is evidence in the record of Garcia's suspicious behavior. At Garcia's preliminary hearing, Officer Lemery testified that Garcia appeared to be on "something" because Garcia was jittery and anxious. Shortly after concluding his interaction with Lemery, Garcia checked out of room 1005 and into room 3039 at the same resort. Garcia called room 3039, without knowing that Lemery had answered the phone, and reported he was returning to the hotel.

Garcia cites two cases in support of his argument that the facts in this case did not constitute probable cause for his arrest. In *Beaver*, 41 Kan. App. 2d at 126, the defendant was a frequent social guest at a residence. A search warrant was executed at the residence while Beaver was present in the kitchen. Beaver was arrested for possession of drugs and drug paraphernalia found on the kitchen table. The district court found probable cause did not support Beaver's arrest. A panel of our court affirmed, finding "[w]ithout more than Beaver's mere presence and proximity to the illegal drugs, there was no probable cause to believe that he was in constructive possession of the illegal drugs and drug paraphernalia found on the kitchen table." 41 Kan. App. 2d at 132. The panel emphasized that Beaver had no ties to the residence, nothing on his person, and exhibited no suspicious behavior.

*Beaver* is distinguishable. Unlike Beaver, who was a mere social guest, here Garcia was a registered occupant of room 1005. Only one other person had an interest in the room as a registered guest—Angela Cortez. But Officer Lemery knew Cortez was not in the room when Lemery visited room 1005 because Garcia had just accused her of stealing his vehicle. Moreover, Officer Lemery considered Garcia's behavior suspicious.

8

He reported that Garcia's appeared to be using drugs and inexplicably changed hotel rooms after Garcia's earlier interaction with Lemery outside room 1005. We find that the circumstances here involved several factors that demonstrate possession that were not present in *Beaver.*

Garcia also cites *United States v. Lanier*, 636 F.3d 228 (6th Cir. 2011), in support of his argument. Lanier was a hotel guest whose belongings were still in his room when housekeeping entered and found drugs. The district and appellate court found probable cause to arrest Lanier. 636 F.3d at 230-31, 233. Garcia's purpose in citing *Lanier* appears to be to point out that in *Lanier*, the defendant was arrested as he was returning to the room where the drugs were found. Garcia also notes that Lanier had left his clothing in the room and had hung a "Do Not Disturb" sign on the door. 636 F.3d at 230. Garcia asks us to compare the present case to *Lanier* and find that there was far less tying Garcia to room 1005 than what was present in *Lanier.*

First, we are not bound to follow *Lanier*. See *State v. Thompson*, 284 Kan. 763, 801, 166 P.3d 1015 (2007), *as modified* (Oct. 17, 2007) (holding Kansas state courts are not required to follow decisions of federal circuit courts). Second, the holding in *Lanier* was focused on the conclusion that once a guest checks out of a hotel room, they no longer have any expectation of privacy in that room. We also note that like Lanier, Garcia was a registered guest of the hotel room where the drugs were found. While Garcia was on his way to a different hotel room when he was arrested, the room was still in the same resort, and his proximity to the drugs remains an important factor when considering probable cause. Officer Lemery also noted Garcia's suspicious behavior in checking into another hotel room shortly after he visited with Lemery, as well as the fact Garcia appeared to be using drugs at the time he talked to Lemery. We are not persuaded that *Lanier* dictates our conclusion here.

After careful consideration, we conclude that a totality of circumstances supported Officer Lemery's objectively reasonable belief that Garcia had committed the crime of possession of methamphetamine. We find that the methamphetamine found in room 1005 was found in a hotel room over which Garcia had "some measure of access and right of control." See *Beaver*, 41 Kan. App. 2d at 129. Garcia was one of only two registered guests of room 1005, and the other was believed to have stolen Garcia's vehicle prior to Garcia checking out of the room. Hotel staff discovered the drugs in room 1005 shortly after Garcia checked out. Officer Lemery returned to room 1005 less than 90 minutes after he was there speaking with Garcia. This left a short period of time between Garcia leaving the room and hotel staff arriving. The evidence at trial was that the hotel room remained locked after Garcia's departure. And as we have explained, in addition to Garcia's close proximity to the drugs, Officer Lemery found the drugs in plain view at the foot of the hotel bed. Officer Lemery also found Garcia's behavior suspicious in that he had moved to a different hotel room shortly after Lemery visited room 1005. Officer Lemery also noted Garcia appeared to be on "something" because he was jittery and anxious. The totality of these factors supported a probable cause finding that Garcia committed the crime of possession of methamphetamine related to the drugs found in room 1005. Thus, the search incident to Garcia's arrest was legal.

The district court did not err denying Garcia's motion to suppress.

Affirmed.