NOT DESIGNATED FOR PUBLICATION

No. 117,066

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN ALLEN MURRIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed December 22, 2017. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM: Brian Allen Murrin was found guilty by a jury of one count of possession of marijuana and one count of possession of drug paraphernalia. Murrin appeals his convictions, arguing that the prosecutor committed reversible prosecutorial error during closing arguments. Murrin specifically argues that the prosecutor committed prosecutorial error by (1) misstating the law on possession; and (2) stating his personal opinion of Murrin's guilt. When considered in the context of both parties' closing arguments and Murrin's theory of defense, the prosecutor's closing argument did not amount to prosecutorial error. Accordingly, Murrin's argument fails and his convictions and sentence are affirmed.

1

On June 17, 2015, a police officer with the Clay Center Police Department went to 1033 Dexter Street in Clay Center, Kansas, in an effort to locate Murrin. The officer's reason for being at the home was that he had an arrest warrant for Murrin that was not related to the present charges. This was not presented to the jury. When the officer arrived at the home, Murrin greeted him at the door. Murrin told the officer that he had some papers to show him, so he invited the officer inside. Murrin and his two young children were the only people in the home.

Once inside the home, the officer stood in the living room while Murrin searched for the papers. The officer noticed a silver colored smoking pipe sitting on an ottoman near the couch. The officer recognized the pipe as the type often used to smoke illegal substances. Initially, the officer did not say anything to Murrin about the presence of the pipe.

As Murrin was searching for the papers, he walked near the ottoman. With one hand, Murrin picked up a television remote. With his other hand, he picked up a hat. While he was using the television remote, he dropped the hat on top of the pipe, concealing it from the officer's view. The officer told Murrin that he had already seen the pipe. The officer moved the hat and picked up the pipe. Murrin did not say anything but continued searching for the papers.

The officer told Murrin he was under arrest. Before actually placing Murrin under arrest, the officer requested Murrin's wife come home from work to watch the children. The officer and Murrin waited in the living room for Murrin's wife to come home. She arrived about 15 minutes later. Murrin told his wife that the officer had found the pipe. Murrin's wife asked him, "What pipe[?]" Murrin told her, "[T]he pipe on the thing"—

undoubtedly referring to the ottoman. At that point, Murrin's wife became angry. She told the officer, "[W]hat the hell, take me to jail, that's mine."

The officer took Murrin outside of the home, because he did not want to arrest him in front of the children. The officer placed Murrin under arrest. As he walked Murrin to his police vehicle, Murrin's wife followed. She continued to plead with the officer to take her to jail claiming that the pipe belonged to her. She was distraught. The officer took Murrin away. He did not arrest Murrin's wife.

The pipe was sent to the Kansas Bureau of Investigation for testing. The test results showed that the pipe contained tetrahydrocannabinol (THC), a compound found in marijuana. On February 1, 2016, Murrin was charged with one count of felony possession of marijuana and one count of misdemeanor possession of drug paraphernalia.

On August 12, 2016, a jury found Murrin guilty of both charges. Murrin's presentence investigation report indicated that he was criminal history C. Murrin was sentenced to a total controlling prison sentence of 30 months with 12 months of postrelease supervision. Murrin filed a timely notice of appeal.

*Did the Prosecutor Commit Reversible Prosecutorial Error in Closing Arguments?*

In *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), our Supreme Court reworked the concept of prosecutorial error and established a new standard of review for claims thereof. Under *Sherman*, appellate courts use a two-step process to evaluate claims of prosecutorial error:

"These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that

does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]" 305 Kan. at 109.

Murrin argues that the prosecutor committed reversible error by (1) misstating the law on possession; and (2) stating his personal opinion of Murrin's guilt. As Murrin presents two arguments relating to claims of prosecutorial error, we will address them separately.

## DID THE PROSECUTOR COMMIT REVERSIBLE PROSECUTORIAL ERROR BY MISSTATING THE LAW ON POSSESSION?

Murrin takes issue with the prosecutor's statements relating to the law on possession. Murrin specifically argues that the prosecutor improperly told the jury that "knowledge [of] and access [to the pipe] were sufficient to convict [him] of possession of the pipe." Murrin claims this was an incorrect statement of the law and therefore outside the wide latitude given prosecutors in closing arguments. Murrin challenges the prosecutor's following statements to the jury:

"Given the fact that Mr. Murrin was the only adult in the house, the fact it was out there in plain sight, access for anyone, indicates possession. Not only does it indicate possession, it indicates knowing possession. The officer didn't find it under the couch

4

where somebody might have put it and Mr. Murrin not known. Found it in the very room Mr. Murrin was in, right in plain sight, so as I said, that indicates not only possession but it indicates knowing possession. Would have been hard to be in that room and not know that was there when it's right there on the ottoman, and I would submit to you, ladies and gentlemen, that there was no mistaking what this was. Mr. Murrin didn't say, what's that thing? You know by its very appearance that you know it's not a tobacco pipe, it's not something that's innocuous, something without some sort of identity to it. It's pretty obvious when you see it that it's drug paraphernalia. It was there, he was there, it was in the open, it contained a controlled substance."

Murrin further challenges the prosecutor's following statements to the jury made during his rebuttal:

"[Defense counsel] said the act of putting the hat over it is how—I'm asking you to find that because of that, ownership, no—I'm not asking you to find ownership at all because he put a hat over it, I'm here to tell you, ladies and gentlemen, if he'd never put a hat over it, but if it'd been out there in plain open sight with him in the living room when [the officer] came in, I'd still be here today arguing this case for you, in front of you, because guess what, he was the adult, only person in the house, other than very small children, pipe is out in plain view of everyone. He possessed that pipe, ladies and gentlemen."

Based on these statements from the prosecutor, Murrin argues that the "State's argument, that knowledge of and access to the pipe is sufficient to establish possession, was legally incorrect." Murrin relies on *State v. Washington*, 244 Kan. 652, 772 P.2d 768 (1989), for support of his argument.

In *Washington*, our Supreme Court spoke on the law of possession:

"We have held that possession of a controlled substance requires specific intent to exercise control over the substance, with knowledge of the nature of the substance. [Citation omitted.] The possession of a controlled substance may be immediate and

exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control. [Citation omitted.] Proof the required elements for possession of a controlled substance may be established by circumstantial evidence. [Citations omitted.]" 244 Kan. at 654.

Murrin also points to *State v. Beaver*, 41 Kan. App. 2d 124, 200 P.3d 490 (2009), in arguing that "'mere presence or access to the drugs' is insufficient to sustain a conviction." The *Beaver* court was reviewing the sufficiency of the evidence of a conviction for *constructive* possession. The court held:

"Factors establishing a defendant's possession of the drugs include the following: '[a] defendant's proximity to the area where the drugs were found, the fact that they were in plain view, the proximity of his belongings to the drugs, and his previous participation in the sale of drugs.' [Citation omitted.] Additional factors include defendant's incriminating statements and suspicious behavior. [Citation omitted.]" 41 Kan. App. at 129.

Here, as Murrin points out, the jury did not receive an instruction on constructive possession. Murrin argues that because the jury did not have the benefit of a constructive possession instruction, the prosecutor's alleged misstatement of the law is compounded. In reality, the missing constructive possession jury instruction just means that the factors from *Beaver* are not particularly relevant to his case. The jury did receive two instructions on possession, both identical—one for possession of the marijuana and one for possession of the pipe. Both instructions clearly defined "possession" as "having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control."

Murrin's argument boils down to the assertion that the prosecutor's closing argument effectively changed the definition of possession so that a showing of knowledge of and access to the pipe was sufficient to establish a conviction. Under the

6

clearly stated jury instructions, however, the State was required to prove (1) control of the pipe; (2) knowledge of the pipe; and (3) intent to control the pipe or knowingly keeping the pipe where the person has some access and right of control. Thus, Murrin is arguing that the State tried to shirk its burden of showing control and intent.

Murrin's argument fails in light of the State's entire closing argument. The prosecutor clearly informed the jury that "[p]ossession means having joint or exclusive control over an item with knowledge of and intent to have such control, or knowingly keeping some item in a place where the person has some measure of access and right of control." The prosecutor's definition of possession was identical to that contained in the jury instruction. The prosecutor then told the jury that "when you follow jury instructions, you're following the law of the State of Kansas." Later, in reply to Murrin's closing argument, the prosecutor once again told the jury that "Jury Instruction No. 5 tells you what I must prove to prove that Mr. Murrin possessed that [pipe], and you'll notice it doesn't say anything about ownership. I only have to prove he possessed it." Finally, the prosecutor told the jury: "This jury instruction says you must possess the pipe. It also gives you a little bit of a definition of how the law defines possession." Thus, the prosecutor referred the jury back to the instructions, or made it aware of the instructions, at least four times during his closing arguments.

Moreover, it is clear from the excerpts of the closing arguments that both parties focused on Murrin's wife's claim of ownership. Both parties acknowledge on appeal that it was the key issue for the jury to consider and weigh in reaching its verdict. The importance of the issue is further evidenced in the substance of Murrin's opening argument at trial. During his opening, Murrin argued that

"there's a confession in this case from [his wife]. She states, this is mine, take me to jail. She states it outright. Mr. Murrin moves a hat and he's taken to jail. The movement of the hat with the statement that, it's mine, take me to jail, at the end of this, you'll be able to

7

weigh those two acts and determine which one is more probative of the allegation of possession."

Thus, Murrin's theory of defense was clearly that his wife owned the pipe and, therefore, he could not and did not possess it on the date in question.

When viewed in the context of Murrin's theory of defense, it becomes clear that the prosecutor's argument was directed at rebutting Murrin's assertions that his wife's claim of ownership undermined the State's evidence of his possession. The prosecutor was not misstating the law on possession. The fact that the prosecutor focused on some elements of possession to the exclusion of others does not mean he misstated the law. He still stated the correct law on possession at the beginning of his closing argument and referred the jury back to the instructions, which clearly and fully stated the law on possession.

Murrin has failed to show that the prosecutor committed prosecutorial error during closing arguments by misstating the law of possession. The prosecutor's statements relating to the law of possession were not misstatements and did not fall outside the wide latitude afforded a prosecutor in attempting to obtain a conviction.

DID THE PROSECUTOR COMMIT REVERSIBLE PROSECUTORIAL ERROR BY STATING HIS PERSONAL OPINION OF MURRIN'S GUILT?

Murrin asserts that the prosecutor committed reversible prosecutorial error when he improperly expressed his personal opinion of Murrin's guilt. Murrin relies on *State v. Peppers*, 294 Kan. 377, 399, 276 P.3d 148 (2012), in which our Supreme Court held that prosecutors are prohibited from offering juries their personal opinions on the guilt or innocence of defendants because such opinions are a form of unsworn testimony and not commentary on the evidence. Prosecutors are not prohibited, however, from arguing that the evidence demonstrates a defendant's guilt. 294 Kan. at 399. The court noted that

8

certain statements regarding a defendant's guilt are allowed so long as they are accompanied by a directional statement that "can 'best be characterized' as serving 'as an opening for the prosecutor's upcoming summation of the evidence.' *State v. Mann*, 274 Kan. 670, 689, 56 P.3d 212 (2002)." *Peppers*, 294 Kan. at 399. "It is necessary . . . for a prosecutor to say something akin to 'the evidence shows defendant's guilt' in order to make a statement merely directional and not an expression of the prosecutor's personal opinion." 294 Kan. at 400.

In *Peppers*, the court considered the following two statements challenged by the defendant:

> "'Now, when [Pepper's counsel] finishes up, I'm going to have an opportunity to come talk to you again and when I do, I'm going to ask that you find this defendant, Antwan Peppers, guilty of murder in the first degree and guilty of attempted murder in the first degree. Why? Because he did it.'
>
>      . . . .
>
> "'When you come back in after your deliberation after reviewing the evidence, you need to come in, you need to look at the defendant, and you need to tell him he's guilty and you need to look him in the eye and say you are guilty of murder and you are guilty of attempted murder because he is.'" 294 Kan. at 399.

The court noted that the prosecutor failed to include any directional language that may have made the statements permissible. Accordingly, the court held that the two statements were impermissible expressions of the prosecutor's personal opinion of guilt. 294 Kan. at 400.

In *State v. De La Torre*, 300 Kan. 591, 612, 331 P.3d 815 (2014), our Supreme Court revisited and applied the "'directional' statement" rule. In *De La Torre*, the defendant challenged the prosecutor's following statement:

"'I want to go over the elements of the case which the State is asking you to find in this case in order to return a verdict of guilty.

"'What the State has to prove beyond a reasonable doubt, but not beyond all doubt, just beyond a reasonable doubt, which is a burden we, of course, willingly and gladly accept, and it should be that way. One, that the Defendant killed [Joselyn]. I don't think there is any dispute about that. Two, that such killing was done while in the commission of abuse of a child. I don't believe there is any dispute about that. And, that this act occurred on or about the 6th day of September, 2009 in Ford County, Kansas. No dispute about that.

"'Now, the elements of abuse of a child are you have to be able to find in order for it to be in the commission of the felony of child abuse, that the Defendant intentionally inflicted cruel and inhuman punishment upon [Joselyn], that [Joselyn] was a child under the age of 18 years, and, that this act occurred between the 15th day of August and the 6th day of September, 2009 in Ford County.

"'So, let's look to—first, to the facts of the case.'" 300 Kan. at 611.

The *De La Torre* court discussed the challenged statement:

"The statement here occupies a middle ground between the impermissible opinion in *Peppers* and the permissible directional statement in *Mann.* It was made near the beginning of the prosecutor's remarks and did not explicitly include directional language cuing the jury that he would be offering reasons supporting the stated 'belief' that there was no dispute the killing occurred 'in the commission of abuse of a child.' But after reciting the elements along with the objected-to comments, he directed the jury toward the facts, then discussed the evidence in the case at length, and bookended the statement with reminders about the State's burden of proof and the jury's role in assessing whether the State met that burden. He explained it was the State's burden to prove each element beyond a reasonable doubt, and he concluded after discussing the evidence that it was for the jury to determine whether the State had proven the element." 300 Kan. at 612.

The court held that the challenged statement was not improper. In holding that the statement was not an impermissible statement of the prosecutor's personal opinion of guilt, the court focused on the context of the argument that followed it. 300 Kan. at 612.

10

Here, Murrin argues that the prosecutor's statements are akin to those made in *Peppers* and are impermissible statements of the prosecutor's personal opinion of guilt. The State, on the other hand, argues that the prosecutor's statements, when considered in the context of the surrounding argument, are more like the statement in *De La Torre*, and, thus, proper.

In reviewing the statements challenged by Murrin, we must consider the statements in the context of the prosecutor's surrounding arguments. The prosecutor's arguments are as follows with the challenged comments highlighted in italics:

> "[Defense counsel] said that I was trying to convince you the act of concealment implied ownership.
>
> "Don't be mistaken, ladies and gentlemen, I'm not trying to imply ownership here for anybody. The reason why, Jury Instruction No. 5 tells you what I must prove to prove that Mr. Murrin possessed that [pipe], and you'll notice it doesn't say anything about ownership. I only have to prove he possessed it.
>
> "If his next door neighbor owned it and lent it to him, guess who would be charged? Mr. Murrin, because it was in his possession. It seems odd maybe to us that the law doesn't necessarily prohibit ownership, it prohibits possession. Doesn't matter who owned it, and if we go back—let's assume for a second [Murrin's wife] did own this pipe, it doesn't matter. [Murrin's wife] was not in possession of this pipe, ladies and gentlemen. She was at work. She was not in possession of this pipe.
>
> "This jury instruction says you must possess the pipe. It also gives you a little bit of a definition of how the law defines possession. You can possess it exclusively, which means you possess it all by yourself, or you can possess it jointly. You can possess it with others. For all I know this may be [Murrin's wife's] and Mr. Murrin's pipe and maybe they smoked it together, I don't know. *I don't know who owned it, but I know who possessed it at the time* [*the officer*] *went into that house and the person in possession of it was* Mr. *Murrin*.
>
> "[Defense counsel] said the act of putting the hat over it is how—I'm asking you to find that because of that, ownership, no—I'm not asking you to find ownership at all because he put a hat over it, I'm here to tell you, ladies and gentlemen, if he'd never put a

11

hat over it, but if it'd been out there in plain open sight with him in the living room when [the officer] came in, I'd still be here today arguing this case for you, in front of you, because guess what, he was the adult, only person in the house, other than very small children, pipe is out in plain view of everyone. *He possessed that pipe, ladies and gentlemen.*

"The fact he put the hat over it may indicate to you that he knew it was there and didn't want the officer to see it, may indicate a lot of things, but his possession was complete before he ever grabbed the hat, so I'd be here today even if there had been no hat in this case, but I think you can evaluate, as a jury, it's up to you to decide what him putting a hat on top of it trying to prevent a police officer from seeing it means, you can decide what that means, that's your decision, not mine, but I think the hat is important to show that he was aware of it, he knew it was illegal, he didn't want the police officer to see it." (Emphases added.)

When read in the context of the surrounding argument, the prosecutor's challenged statements are more *De La Torre* and less *Peppers*. The prosecutor was clearly responding to Murrin's theory of defense that his wife's ownership somehow undermined his alleged possession. Although the prosecutor did not employ a perfect directional statement, such as "the evidence shows [Murrin's] guilt," he did open his argument by directing the jury to the instruction on the law of possession. The prosecutor indicated that the jury instruction on possession would tell it what the State was required to prove. The jury instruction framed the prosecutor's argument. Murrin acknowledges that the prosecutor discussed some of the evidence before making the challenged statements. Finally, the prosecutor closed his argument by reminding the jury that the ultimate decision of whether Murrin was guilty was its to make.

The context of the prosecutor's statements to the jury shows that they were not impermissible statements of the prosecutor's personal opinion of guilt. Accordingly, Murrin has failed to show that the prosecutor committed prosecutorial error during closing arguments by improperly stating his personal opinion of Murrin's guilt. The

12

prosecutor's statements did not fall outside the wide latitude afforded a prosecutor in attempting to obtain a conviction.

Affirmed.