NOT DESIGNATED FOR PUBLICATION

No. 125,202

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DARLENE ANTIONETTE GIHON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Barton District Court; CAREY L. HIPP, judge. Submitted without oral argument. Opinion filed January 26, 2024. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and HILL, JJ.

PER CURIAM: Darlene Antoinette Gihon appeals her conviction of possession of methamphetamine. After reviewing the record, we conclude that although errors occurred at trial, none warrant reversal. Accordingly, we affirm Gihon's conviction.

*There are perils in hiding something in your pocket.*

After her house sustained fire damage, Gihon was cleaning up debris in her front yard in the early evening hours in May 2021. While Gihon was cleaning, Deputy Alexandra Mason approached Gihon to serve her with civil papers. As Mason approached

her, Gihon noticed a baggie on the ground. Gihon picked up the baggie and put it in her pocket.

Deputy Mason thought Gihon had an active warrant for her arrest, and she called the dispatcher to confirm. When she received confirmation of an active warrant, Mason arrested Gihon. Mason began searching Gihon for weapons or contraband and noticed Gihon pulled away from her when she tried to search Gihon's front left pocket. Concerned that Gihon may be concealing a weapon, Mason tried to search the pocket again and found the small baggie which contained white crystal powder residue.

Mason field tested the substance and received a presumptive positive result for methamphetamine. A KBI forensic chemist later tested the substance and received a positive result for methamphetamine. The State charged Gihon with one count of possession of methamphetamine, a severity level 5 drug felony.

At trial, two witnesses testified for the State: Deputy Mason and KBI Forensic Chemist Alyssa Weeks. Mason testified that Gihon claimed the baggie belonged to her son who had prior interactions with Mason but none related to drug use.

Gihon was the sole witness for the defense. She claimed that she picked up the baggie as Mason approached her because "it could have had something in there that could have gotten everybody in trouble."

Later, she said that she could not see anything inside the baggie and thought it was empty. In response to a question on cross-examination about why she thought the baggie would get everybody in trouble, Gihon responded that she "immediately knew what it was." Gihon agreed with the State that it was more than just a simple baggie and that she

suspected the baggie could get everybody in trouble because "when you have methamphetamine in your family, and your son is using," the baggie could cause trouble.

The jury found Gihon guilty of possession of methamphetamine. Gihon received a suspended 30-month prison sentence with 12 months of probation.

To us, Gihon argues:
1. There was insufficient evidence to convict her of possession of methamphetamine;
2. Comments made by the prosecutor during closing argument were prosecutorial error;
3. The trial court should have given the jury a K.S.A. 60-455 limiting instruction;
4. The trial court erred by refusing to give Gihon's requested jury instruction on nonexclusive possession; and
5. Cumulative errors deprived Gihon of a fair trial.

Gihon first argues that the State failed to present sufficient evidence to prove that she was guilty. In order to determine whether there was sufficient evidence to support Gihon's conviction, a review of the relevant caselaw is helpful. We review sufficiency challenges in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. When we make this review, we do not reweigh evidence or resolve conflicts in the evidence, nor do we pass on the credibility of witnesses. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). The burden on the challenging party is a high one, and "only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt" will we reverse such a verdict. *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

Gihon focuses her argument about the sufficiency of the evidence on the elements of knowledge and intent to possess methamphetamine. Because Gihon did not raise

3

challenges to any other element of her conviction, such challenges are waived. See *Meggerson*, 312 Kan. at 246.

Gihon's possession of methamphetamine charge is based on K.S.A. 2020 Supp. 21-5706(a). Under the statute, the State must simply prove that Gihon possessed methamphetamine. Possession is defined as "joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2020 Supp. 21-5701(q).

It follows then that "knowledge and intent" are the operative terms in the definition for possession. These terms are defined:

"A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result. . . .

"A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 2022 Supp. 21-5202(h)-(i).

Intent and knowledge are often proven through circumstantial evidence because it is inherently difficult to produce direct evidence of a person's mental state. See *State v. Gonzalez*, 311 Kan. 281, 288, 460 P.3d 348 (2020).

4

Gihon argues that to be found guilty, the State had to prove that she had the knowledge and intent to possess methamphetamine before she picked up the baggie. We think that argument is flawed. Here, her knowledge and intent became clear the moment she recognized the substance in the baggie and then concealed it in her pocket. Therefore, the correct point to focus our analysis is the moment when mens rea arose. That is when she chose to hide the baggie and put it in her pocket.

In her own testimony, Gihon admits that she "immediately knew what [the baggie] was." Gihon admitted that she knew the baggie could contain something that warranted trouble if the deputy found it on the ground. Her testimony on cross-examination is unconvincing that (1) she thought the baggie was empty; (2) it could have been a jewelry bag with jewelry in it; or that (3) she did not look at the baggie and did not think about it. The jury was in the best position to weigh the credibility of Gihon's testimony against the testimony from Deputy Mason and KBI Forensic Scientist Alyssa Weeks. The jury found the State's witnesses were more credible.

To summarize, there was sufficient evidence that supported Gihon's conviction for possession of methamphetamine. The record shows that Deputy Mason found the baggie on Gihon's person. The substance in that baggie yielded positive results for methamphetamine both in the field test conducted by Mason and the lab test performed by KBI Forensic Scientist Weeks.

Further, Gihon testified that she picked up the baggie and put it in her pocket with the intent to keep everyone out of trouble. Thus, the jury arrived at the reasonable conclusion from the evidence and Gihon's testimony that Gihon recognized the illegal nature of the substance inside the baggie and chose to conceal it from the deputy approaching her by putting it in her pocket. We will not reweigh evidence or assess the credibility of witnesses, and we must view the evidence in a light most favorable to the

5

State. We therefore find that there was sufficient evidence that Gihon knowingly and intentionally possessed methamphetamine.

*The prosecutor erred in closing argument by expressing opinions which invited the jury to accept those opinions as fact, but those errors are not reversible.*

Gihon asserts that statements made by the prosecutor in closing argument constituted prosecutorial error. Her challenge to closing argument statements can be classified into two categories: (1) the prosecutor's discussion of the State's burden of proof and (2) the opinions expressed by the prosecutor which invited the jury to accept such opinions as fact. We agree with Gihon that a majority of statements under the second category were indeed prosecutorial errors, but we find those errors are not reversible.

We review the merits of prosecutorial error claims in two steps. First, we must determine whether comments made by a prosecutor fall "outside the wide latitude afforded to prosecutors to conduct the State's case in a way that does not offend the defendant's constitutional right to a fair trial." *State v. Chandler*, 307 Kan. 657, Syl. ¶ 6, 414 P.3d 713 (2018). Next, if we find such comments do fall outside the permissible scope, we then evaluate whether those comments prejudiced the defendant's right to a fair trial. 307 Kan. 657, Syl. ¶ 6.

Our analysis is guided by the constitutional harmlessness inquiry announced by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). Using that lens, we will reverse instances of prosecutorial error unless the State proves "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable

possibility that the error contributed to the verdict.'" *Sherman*, 305 Kan. at 109 (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011]).

*Comments about reasonable doubt*

Gihon argues the prosecutor's statements in closing argument discussing the reasonable doubt standard constituted error.

Going deeper into Gihon's challenge to the prosecutor's discussion of beyond a reasonable doubt, we note three subcategories: (1) improperly defining reasonable doubt; (2) implying reasonable doubt has a subjective meaning; and (3) implying reasonable doubt cannot be based on possibilities.

*Definition*

Gihon claims the prosecutor improperly defined reasonable doubt in closing argument. When evaluating claims of prosecutorial error, we look to the context surrounding the challenged comments to determine whether the prosecutor fell outside the wide latitude afforded to prosecutors. Thus, we look at the exact statements made by the prosecutor:

> "So then we look at what is reasonable doubt, because that is a very important thing today. I can't give you an exact definition. That's *something that you as reasonable people determine.* But I can tell you this: It is not based on imaginary things. It's *not based on any doubt, any possibility. It's what reasonable things can be determined from the evidence. Reasonable doubt is ultimately up to you all to decide.*" (Emphases added.)

Gihon cites many cases in which our courts warn prosecutors against defining reasonable doubt as it tends to confuse rather than assist the jury in the discharge of its

7

duty. See *State v. Walker*, 276 Kan. 939, 956, 80 P.3d 1132 (2003); *State v. Thomas*, 307 Kan. 733, 743, 415 P.3d 430 (2018).

The prosecutor's comments here do not improperly define reasonable doubt. We hold the statements do not constitute prosecutorial error given the context in which the statements were made. The prosecutor's statement that "I can't give you an exact definition" is not an attempt to define reasonable doubt.

*We do not agree with Gihon's claims about the implications of the prosecutor's statements.*

Under the second subcategory of statements, Gihon claims the prosecutor implied to the jury that reasonable doubt cannot be based on possibilities. She claims that by telling the jury that reasonable doubt is based on "what reasonable things can be determined from the evidence[,]" the prosecutor implied that the jury could not infer reasonable doubt from a lack of evidence.

But the prosecutor did not tell the jury that reasonable doubt could not be based on *a possibility*. Rather, the prosecutor told the jury that reasonable doubt cannot be based on *any possibility*. We find that distinction important because while Gihon is correct that reasonable doubt may derive from possibilities, it may not arise from any possibilities. It must be a *reasonable* doubt. See *Sherman*, 305 Kan. at 117 (prosecutors may differentiate between reasonable doubt and proof beyond all doubt).

Therefore, we find the prosecutor's comments do not fall outside the permissible scope and do not constitute prosecutorial error.

8

*The prosecutor did not suggest reasonable doubt has a subjective meaning.*

For the last subcategory of challenged statements discussing reasonable doubt, Gihon claims the prosecutor's comments suggested that reasonable doubt has a subjective meaning. Essentially, Gihon argues, the prosecutor "instructed the jury that reasonable doubt means whatever the jury decided it should be."

A prosecutor cannot equate reasonable doubt to common sense, intuition, or a probability burden. *Thomas*, 307 Kan. at 743; see *State v. Holt*, 300 Kan. 985, 101-02, 336 P.3d 312 (2014); *State v. Brinklow*, 288 Kan. 39, 49-50, 200 P.3d 1225 (2009); *State v. Mitchell*, 269 Kan. 349, 360-61, 7 P.3d 1135 (2000).

The specific statements that Gihon challenges were that reasonable doubt is "something that you as reasonable people determine" and "[r]easonable doubt is ultimately up to you all to decide." Gihon claims the first statement "implied that reasonable doubt is determined by the common sense of the jurors or what the jurors deemed to be reasonable."

Once again, we must look to the context surrounding the challenged statements. See *State v. King*, 308 Kan. 16, 33, 417 P.3d 1073 (2018) (appellate courts analyze a challenged comment in the context that it was made rather than isolating the comment and considering it in the abstract). Here, the prosecutor attempted to use the two statements to inform the jury of its duty to determine whether reasonable doubt existed. Neither statement included any suggestion that the jury could define reasonable doubt themselves nor did the prosecutor equate reasonable doubt with common sense.

We do not believe the prosecutor's comments to the jury implied that beyond a reasonable doubt was a subjective standard. Therefore, we find no prosecutorial error.

9

*The prosecutor erred in all but three times when the statements "I think," "we," and "us" were used in closing argument.*

Gihon next argues that statements made by the prosecutor reflected improper opinions which invited the jury to accept as fact. Five passages are challenged by Gihon:

"So looking at the evidence today, I want to start with where we ended, with the defendant's own testimony, because *I think* that tells us quite a bit about today's case; specifically when she said it could have gotten everybody in trouble. That tells *us* a lot about what was going through the defendant's mind, what she knew when this happened in that moment." (Emphases added.)

"But *we* can't always find the drugs in their full form straight from whoever made them up. *We* find them when *we* find them. *We* find the items when the officers have reason to go looking and discover them." (Emphases added.)

"Why would you pull away? Because you realize you have something there that you probably shouldn't, whether that be weapons, drugs, what have you.

"In this case it was drugs. And what *we* can take from that statement—or from that action of pulling away is that the defendant knew what she had; that she knew she had something she was not supposed to. And she realized the deputy was about to find it." (Emphasis added.)

"While there's been some finger-pointing going on saying, well, it could have been her son's, *we* didn't find it on her son. *We* found it in her pocket. And while she can point blame at others, *we* have to look at the evidence that was presented today; not that it could have been this, it could have been that, but the evidence, those true hard facts and those things that *we* can reasonably interpret from those facts." (Emphases added.)

*"We know* it's methamphetamine because the KBI analyzed it and determined it to be so. *We know* it was found in the defendant's pocket. And *we know* in her own words that she thought it could have gotten everyone in trouble. Based on that I'd ask you to find the defendant guilty of the sole count of possessing methamphetamine." (Emphases added.)

10

Gihon challenges these statements which seem to be assertions of the prosecutor's opinions as facts. As always, we look to caselaw for guidance.

Prosecutors stay inside the permissible scope of argument if they "argue the evidence demonstrates a defendant is guilty so long as the prosecutor does not state his or her personal opinion regarding the ultimate guilt or innocence of the defendant." *King*, 308 Kan. at 30. The prosecutor may also use language such as "'we know'" when discussing evidence which is uncontroverted, so long as the prosecutor does not convey their opinion. *King*, 308 Kan. at 34.

By preventing the prosecutor from inserting opinions, the court avoids the danger of offering to the jury the prosecutor's "personal opinion as to the credibility of a witness because such a comment is unsworn, unchecked testimony, not commentary on the evidence of the case. The determination of the truthfulness of a witness is for the jury." *King*, 308 Kan. at 30-31, 34 (finding the prosecutor's use of "'we know'" improperly drew an inference for the jury). The use of "we know" may improperly draw inferences for the jury "regardless of whether 'the inferences being drawn were reasonable.'" *State v. Douglas*, 313 Kan. 704, 714, 490 P.3d 34 (2021). That is because "an inference, even a reasonable one, captures the prosecutor's thought process or opinion and is not an uncontroverted fact." *State v. Alfaro-Valleda*, 314 Kan. 526, 539, 502 P.3d 66 (2022).

*We find the comments conveying the prosecutor's opinion to be error.*

Gihon's argument centers on her contention that by using the statements, "we," "I think," "we know," and "us," the prosecutor impermissibly conveyed his opinions and thought processes to the jury. She argues the prosecutor "bolstered the credibility of the police officer's testimony that the baggie contained methamphetamine residue at the time it was discovered through the prosecutor's use of the word 'we.'"

11

Except for three instances, the State concedes that the prosecutor erred by using opinion statements in closing argument.

*It was not improper for the prosecutor to use "we know" in discussing uncontroverted evidence.*

The State conceded that statements by the prosecutor using "I think," "we," and "us" were likely errors. However, the State argues that the three statements using "we know" were not improper:

- "*We know* it's methamphetamine because the KBI analyzed it and determined it to be so."
- "*We know* it was found in the defendant's pocket."
- "And *we know* in her own words that she thought it could have gotten everyone in trouble." (Emphases added.)

The first statement that "we know" that the baggie contained methamphetamine was supported by uncontroverted evidence. At trial, Gihon's lawyer cross-examined the KBI analyst on the testing methods employed to detect substances and whether the analyst could determine the age of the substance.

The second and third statements are similarly supported by uncontroverted evidence. Gihon admitted in her testimony at trial that the baggie containing methamphetamine was found in her pocket. Additionally, Gihon admits in her brief that the baggie was found in her pocket.

All but three times when the prosecutor used statements such as "I think," "we," and "us" constitute prosecutorial error. Even so, any error resulting from the statements were individually harmless.

12

When we determine comments by a prosecutor constitute prosecutorial error, we must reverse unless the State proves beyond a reasonable doubt that the error did not affect the outcome of the trial. *Sherman*, 305 Kan. at 109.

Gihon's failure to object to the statements at trial may factor into our analysis to determine whether the error is reversible. *State v. Lowery*, 308 Kan. 1183, 1211, 427 P.3d 865 (2018). The State would like us to go further and modify the present burden framework for the reversibility analysis. The State believes the defendant should bear the burden to show prosecutorial error warrants reversal when the defendant does not object to the statements at trial. Supporting their contention, the State cites *State v. Ward*, 292 Kan. 541, 568-69, 256 P.3d 801 (2011), where our Supreme Court modified the burden shifting rule. The State fails to provide compelling and just reasons to overturn recognized precedent from our Supreme Court. See *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022) (The Kansas Court of Appeals is duty-bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position.).

Turning to the reversibility analysis, we find the errors by the prosecutor stating his opinions in closing argument do not warrant reversal. When evaluating prejudice stemming from prosecutorial error, we look to all "'indicators of prejudice, as argued by the parties, and then determine whether the State has met its burden—i.e., shown that there is no reasonable possibility that the error contributed to the verdict.'" *State v. Brown*, 316 Kan. 154, 169, 513 P.3d 1207 (2022). Additionally, we weigh jury instructions in deciding whether prosecutorial errors prejudiced the defendant in their right to a fair trial. *Brown*, 316 Kan. at 170. The strength of the State's case may aid our analysis, but does not foreclose reversal, as prejudice may be found in even the strongest of cases. *Brown*, 316 Kan. at 169.

Here, the trial court instructed the jury that:

> "'Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by the evidence, they should be disregarded.'"

The State argues that the outcome would be the same had the prosecutor substituted the erroneous statements with permissible statements such as "'the evidence shows.'" We find this persuasive in reaching our decision that the errors did not affect the outcome of the trial. Given the evidence supporting a conviction for possession of methamphetamine; the jury instruction cautioning the jury against regarding statements or arguments by counsel as evidence; and the likelihood of the same outcome had the prosecutor substituted permissible statements, we hold the erroneous statements during closing argument by the prosecutor do not warrant reversal.

*A limiting jury instruction should have been given.*

Gihon asserts the trial court erred in omitting a limiting instruction on prior bad acts evidence. We agree. The trial court erred in failing to give a limiting instruction when it admitted evidence under K.S.A. 60-455. The jury heard evidence of Gihon's outstanding warrant and the trial court erred by failing to give the jury a limiting instruction. Even so, that error is not reversible.

*We review jury instruction issues under a multi-step analysis.*

When presented with jury instruction issues, we must first determine whether the challenging party preserved the issue for appeal. Next, to determine whether error occurred, we consider whether the omitted instruction was factually and legally

14

appropriate. Lastly, we determine whether the error requires reversal. The lens which focuses our inquiry is guided by whether the challenging party preserved the issue. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021). Without an objection to the proposed jury instruction at trial, the proper standard of review is for clear error, whose burden is borne by the party claiming error. See *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021).

Gihon did not request the instruction at trial, and so we must use the clear error standard. Under that standard, we will only reverse if we are "firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred." *Crosby*, 312 Kan. at 639.  Because the State concedes that the instruction was legally and factually appropriate, we focus our analysis on whether Gihon carried her burden to show clear error.

We are unconvinced that Gihon's trial would have resulted in a different outcome with the inclusion of a K.S.A. 60-455 limiting instruction.

Gihon's argument rests on the premise that because the primary issue at trial was her state of mind, the weight assigned by the jury to each witness' testimony was hotly contested. Under that premise, the mere presence of contradiction between the two witnesses' testimony set forth a battle of believability and cast doubt on the question of her intent and knowledge to possess methamphetamine. Because of this tension of trustworthiness, Gihon concludes, "there was at least a real possibility that the jury may have used such evidence improperly."

The evidence admitted at trial that qualifies as prior bad acts under the statute was the mention of an outstanding warrant during Mason's direct examination. The State mentioned the warrant only to provide context as to why Mason arrested Gihon. It was

15

only because Gihon's lawyer specifically asked about the warrant's details that Mason testified that the outstanding warrant was for criminal trespass, a class B misdemeanor. The State objected to the testimony, which the district court sustained.

While the evidence at trial was not overwhelming, the State did produce evidence that Gihon possessed methamphetamine both knowingly and intentionally by picking up the baggie and placing it in her pocket. The contents of the baggie tested positive for methamphetamine. We thus agree that Gihon's outstanding warrant played a detail in the State's case and a limiting instruction would likely have no impact on the outcome of the trial. Accordingly, the failure to give the limiting instruction is not a reversible error.

*We see no error in refusing to give a nonexclusive possession instruction.*

Gihon next argues that the trial court erred by refusing to give a requested instruction on nonexclusive possession.

We employ the same multi-step analysis outlined in the previous issue, but the standard for reversal is different here because Gihon requested the instruction and the trial court did not include the instruction. To reverse, we must find "'no reasonable probability that the error will or did affect the outcome of the trial.'" *State v. Ross*, 310 Kan. 216, 223, 445 P.3d 726 (2019).

*The requested instruction was legally appropriate.*

Gihon asserts—and the State does not dispute—that the instruction was legally appropriate because the requested instruction was directly from the Pattern Instructions for Kansas. See PIK Crim. 4th 57.040 (2022 Supp.). Legal appropriateness is met when

16

the instruction fairly and accurately states the applicable law. *Holley*, 313 Kan. at 254; *State v. Kleypas*, 305 Kan. 224, 302, 382 P.3d 373 (2016).

We find that the instruction was legally appropriate.

*The instruction was not factually appropriate.*

Gihon claims the instruction was factually appropriate because the facts presented at trial support a theory that multiple people could have had access to the property where Gihon found the baggie. Therefore, Gihon concludes, an instruction on nonexclusive possession was factually appropriate.

Factual appropriateness requires our determination of whether the instruction derived support from the facts of the case. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). Viewed in the light most favorable to the challenging party, sufficient evidence must support the instruction. *Holley*, 313 Kan. at 255. A criminal defendant is generally entitled to an instruction on the law applicable to every theory of defense supported by competent evidence. See K.S.A. 2022 Supp. 21-5108(c); *State v. Keyes*, 312 Kan. 103, 107-08, 472 P.3d 78 (2020). Competent evidence is defined as evidence that "could allow a rational fact finder to reasonably conclude that the defense applies." K.S.A. 2022 Supp. 21-5108(c).

*Gihon's argument for factual appropriateness is unpersuasive.*

Gihon argues that because she testified that she picked up the baggie seconds before her interaction with Mason, "the record shows that she picked the baggie up from an area that *anyone had access to* a mere moment before meeting the police officer." Therefore, Gihon argues that because her property was abandoned, anyone could have

17

accessed the baggie. Because of her testimony establishing open access to her property, Gihon concludes a nonexclusive possession instruction was factually appropriate.

Nonexclusive or constructive possession occurs where an object is kept by a person in a place where he or she has some measure of access to it and right of control over it, but others also have access to the object. *State v. Beaver*, 41 Kan. App. 2d 124, 129, 200 P.3d 490 (2009). More than "'mere presence or access to the drugs'" is required to establish nonexclusive possession. *Beaver*, 41 Kan. App. 2d at 129.

We agree with the trial court that the instruction was not factually appropriate. Therefore, it was not an error for the trial court to omit the requested instruction from the given jury instructions.

*The cumulative error rule does not apply here*.

Gihon argues that cumulative trial errors deprived her of a fair trial. She claims that "one or more jurors could have formed a reasonable doubt that [she] was negligent or reckless with regard to the baggie, but that the state did not prove that she knowingly and intentionally possessed the methamphetamine residue." Because of the lack of overwhelming evidence, Gihon argues that errors had an increased likelihood of prejudicing her defense and depriving her of a fair trial.

Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in context and consider how the trial judge dealt with the errors as they arose; the nature and number of errors and whether they are interrelated; and the overall strength of the

18

evidence. If any of the errors being aggregated are constitutional, the party benefitting from the error must establish beyond a reasonable doubt that the cumulative effect did not affect the outcome. *Alfaro-Valleda*, 314 Kan. at 551-52.

The cumulative error rule does not apply if there are no errors or only a single error. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021).

We found two errors during Gihon's trial that individually do not warrant reversal: improper statements by the prosecutor conveying opinion and the failure to include a K.S.A. 60-455 limiting instruction. Adding the two together does not generate such prejudice that would require reversal of the conviction.

Affirmed.